```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

JESSICA LYN LUTHER

                            Plaintiff,        12-CV-6466

                                                     **DECISION**
                    v.                      **and ORDER**

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY[1]

                            Defendant.

## INTRODUCTION

Represented by counsel, Jessica Lyn Luther ("Plaintiff" or "Luther"), brings this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Supplemental Security Income ("SSI") Benefits. The Court has jurisdiction over this action pursuant to 42 U.S.C. 405(g).

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with the

---

[1] This action was filed on September 4, 2012. Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin, or "the Commissioner," is the Defendant in this suit.

applicable legal standards.  Therefore, this Court hereby grants the Commissioner's motion for judgment on the pleadings and denies the Plaintiff's motion.

## PROCEDURAL HISTORY

On January 7, 2010, Jessica Lyn Luther protectively filed an application for SSI, claiming that she was disabled beginning on September 1, 1996. Administrative Transcript ("Tr.") at 152-155. Luther's claim was denied on May 28, 2010. Tr. at 64. At her request, an administrative hearing was conducted on July 22, 2011 before Administrative Law Judge ("ALJ") Milagros Farnes, who presided via videoconference. Tr. at 33. Luther, who was represented by attorney Kelly Laga, testified at the hearing, as did vocational expert Alina Kurtanich, ("Kurtanich" or "the VE"). Tr. at 36-59.

On August 26, 2011, the ALJ issued a decision finding that Luther was not disabled during the period from her alleged onset date. Tr. at 20-28. On July 5, 2012, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. at 1-6. This action was filed on September 4, 2012.

## FACTUAL BACKGROUND

At the time of the hearing, Plaintiff was a 19-year-old individual with a 10th Grade education. Tr. at 43-44. Her past relevant work was as a cashier. Tr. at 45. Luther claims she became disabled on September 1, 1996, due to alleged borderline and

bipolar personality disorders, which result in an inability to "interact with others... violent outbursts," as well as difficulty focusing and concentrating. Tr. at 175-176.

Since the 5th Grade, Luther's educational record was marked by issues of non-compliance and absenteeism. Pursuant to school recommendations, she was evaluated in 2007 to determine a psychiatric diagnosis and need for treatment and recommendations for a school program. Luther's former counselor at Odyssey Academy provided psychological testing and Individualized Education Program ("IEP") reports from June 2009. Tr. at 195-216. Luther had been diagnosed with ADHD with impulse control difficulties and symptoms of psychiatric disturbance. School psychologist Edward A. Felder, Jr.'s reports refer to Dr. Jeffrey Alberts, who opined that Luther's chronic marijuana use to self-medicate her psychological distress was the primary cause of her mental health issues.

On February 9, 2009, Plaintiff was recommended for a special education Day Program at BOCES Monroe 2 Center because her social, emotional, behavioral, and attentional issues required a "safe, secure rigid environment with clear expectations and teachers that [held] all students accountable for their actions." Tr. at 201. Due to absenteeism, Luther was dropped from the Greece Central School District's rolls in September 2009. Tr. at 196. Plaintiff's mother wanted the Greece School District to pay for Plaintiff to attend an out-of-state schooling program for

adolescents with borderline personality disorder. Tr. at 264. However, the record does not reveal that Plaintiff has returned to school.

Luther has an extensive history of psychiatric care. On February 11, 2008, she was admitted into Outpatient hospitalization at Strong Behavioral Health's Psychiatry Department, presenting with dysregulated mood and affect, suicidal ideation, and acting out behaviors. Tr. at 301-306. She was diagnosed with Bipolar Disorder and Cannabis Dependence. She used marijuana daily. On February 26, 2008, Luther was discharged from these services due to her nonattendance, oppositional behavior and refusal to adhere to her recommended medication regimen. Undated disability reports completed by Luther's mother indicate that Plaintiff refused to take her prescribed medications due to "horrible reactions." Tr. at 237.

Carla Peracchia, M.D., of Southview Internal Medicine, has been Luther's primary care physician since August 2008. Dr. Peracchia's notes from Luther's first visit on August 6, 2008, indicate that Plaintiff was aggressive toward her parents and exhibited symptoms of Borderline Personality Disorder, as well as marijuana addiction.

Additionally, records from Strong Memorial Hospital for the period August 6, 2008 to November 5, 2009 documented Plaintiff's ongoing mental health issues, such as Depression and Borderline

Personality Disorder ("BPD").  On August 6, 2008, Plaintiff was admitted to Strong Behavioral Health's Outpatient Clinic after a mental hygiene arrest.  Tr. at 260-289.  On August 28, 2008, Dr. Peracchia recommended that Luther's mother administer her medications and that Luther attend a Chemical Dependency treatment facility for her THC dependence.  Plaintiff was discharged from Strong Behavioral Health's Outpatient Clinic on October 14, 2008, after she assaulted a member of her group therapy session.  Tr. at 307-311.  She was placed on probation due to this altercation.

In a note dated October 20, 2008, Dr. Peracchia opined that Plaintiff's drug abuse problem was secondary to her psychiatric illness.  Tr. at 299.  On December 1, 2008, Dr. Peracchia observed that Luther's interpersonal relationship skills [were] so limited that she [did] not have any sense of how to act or behave around adults, let alone her peers."  Tr. at 298.  A Magnetic Resonance Imaging ("MRI") taken on December 15, 2008 was normal and did not reveal anything that would explain her behavioral issues.  Tr. at 316.

On January 26, 2010, Plaintiff was referred to the Genesee Mental Health Center.  Tr. at 336-355, 389-422.  At her first visit, therapist Trevor Jones, Licensed Master Social Worker ("LMSW"), assessed Luther's lethality and noted the following risks: BPD, history of suicidal ideation, feelings of isolation and loneliness, drug and alcohol abuse and family conflict.  She was

diagnosed with Bipolar Disorder, Cannabis Abuse and BPD. Her Global Assessment of Functioning ("GAF") score was 48.

On March 3, 2010, Luther complained to LMSW Jones that it was difficult for her to manage her emotions at times of stress. Tr. at 389-422. Luther used marijuana daily to calm herself down and improve her mood. She also had a history of alcohol abuse, with two DWI arrests. She was not taking medication to treat her mental health issues at the time. LMSW Jones opined that Plaintiff would benefit from continued treatment for her BPD and possible mood disorder as well as a medication evaluation. On April 9, 2010, Gregory L. Seeger, M.D., evaluated Plaintiff and noted her history of rage attacks and poor frustration tolerance. She continued to smoke marijuana on a daily basis.

Consultative Examiner, Adele Jones, Ph.D., completed a psychiatric evaluation of Luther on May 20, 2010. Tr. at 362-366. At the time, Plaintiff had been working between 10 and 20 hours per week at Dunkin Donuts. She had maintained the job for a month. She reported being rude to customers, co-workers and her supervisors. In the past, she had been fired from several part-time jobs due to rage and outbursts. Dr. Jones observed that her reports of daily "manic episodes" did not appear to be actual mania. Luther complained of concentration difficulties due to a preoccupation with her social life. She reported daily marijuana

use, and reported using ecstasy two or three times. She interacted poorly during the evaluation.

Luther was able to dress, bathe, and groom, cook, and prepare foods, clean, launder, shop, and manage money. Her hobbies included socializing with friends, watching TV, and listening to the radio. She spent her days "working and smoking pot." Tr. at 365. Dr. Jones opined that she was able to follow and understand simple directions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, and perform complex tasks independently. She did not always exhibit appropriate decision-making. She could not consistently relate with others or appropriately deal with stress. Dr. Jones diagnosed Plaintiff with Bipolar Disorder not otherwise specified ("NOS"). Her prognosis was fair with more consistent medication and sobriety.

On May 26, 2010, State Agency Psychologist A. Hochberg completed a Psychiatric Review Technique of Plaintiff's record and assessed her mental residual functional capacity ("RFC"). Tr. at 381-384. Dr. Hochberg observed that Luther had moderate difficulties in maintaining concentration, persistence, or pace. In particular, she was moderately limited in her ability to work in coordination with or proximity to others without being distracted by them and with her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms.

She was also moderately limited in some aspects of social interaction and adaptation. Dr. Hochberg opined that her allegations were partially credible. She retained the ability to maintain attention and concentration, maintain a regular schedule and learn new tasks. She had difficulty relating with others, making appropriate decisions, and appropriately dealing with stress. Ultimately, Dr. Hochberg opined that Plaintiff retained the ability to work a simple job, with limited stress and limited exposure to others.

On November 3, 2010, Plaintiff was treated at Southview Internal Medicine. Tr. at 385-388. Her rage had been improving. Her new medication, Fluoxetine, was helping her, and she wanted to increase the dose. She was working full-time and enjoyed it. On February 10, 2011, Plaintiff's insight appeared to be improving, and she reported that she was maintaining abstinence from cannabis.

Luther violated her probation and had to serve a one month jail sentence in March 2011. Tr. at 423-426. After her incarceration, she continued her treatment at the Genesee Mental Health facility. Tr. at 446-467. She reported that she was no longer on probation and had resumed her cannabis use. Tr. at 446-451. She was medically stable and her goal was to maintain this mood stability and complete one year of college or one year of sustained gainful employment.

On May 5, 2011, LMSW Jones counseled Plaintiff on how her regular cannabis and alcohol use was not likely to help her promote her own independence and progress toward her goals.  He also told her that she had the potential to have a good job and an independent lifestyle if she maintained her focus and commitment to changing her negative behaviors.  She was not medicated at the time.  LMWS Jones encourged Plaintiff to address her emotional distressed tolerance skills and reinforce the negative consequences of impulsive or reckless decisions.  On June 7, 2011, he noted that Luther had been making progress and her manner of managing situations had significantly improved over the course of treatment.

## DISCUSSION

### I. Scope of Review

When reviewing the appeal of the Social Security Administration's denial of a claimant's application for benefits, Title 42 U.S.C., Section 405(g) directs the Court to accept the Commissioner's factual findings, provided that such findings are supported by substantial evidence in the record.  Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938).  The Court's scope of review is limited to determining whether the Commissioner's findings were supported by substantial evidence in the record, and whether the Commissioner employed the proper legal

standards in evaluating the plaintiff's claim. Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983).

Judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the content of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after reviewing the record, the Court is convinced that Plaintiff has not set forth a plausible claim for relief, judgment on the pleadings may be appropriate. See generally Bell Atlantic Corp. V. Twombly, 550 U.S. 544 (2007).

## II. The Commissioner's Decision to Deny the Plaintiff benefits is Supported by Substantial Evidence in the Record

An individual's physical or mental impairment is not disabling under the Act unless it is "of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1383(a)(3)(B). Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). In her decision denying benefits, the ALJ adhered to the five-step analysis required to evaluate disability claims.² Tr. at 20-28.

---

² The five-step analysis requires the ALJ to consider the following: (1) whether the claimant is performing substantial gainful activity; (2) if not, whether the claimant has a severe impairment which significantly limits his or her physical or mental ability to do basic work activities; (3) if the claimant suffers severe impairment(s), the ALJ considers whether the claimant

Under step 1 of the process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. Tr. at 22. At steps 2 and 3, the ALJ concluded that Plaintiff "[had] the following severe impairment[s]: borderline personality disorder and substance abuse." Id. The ALJ found, however, that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in Appendix 1, Subpart P of the Social Security Administration's regulations. Id.

At steps 4 and 5, the ALJ concluded that although Plaintiff was unable to perform her past relevant work, she retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with some nonexertional limitations. Tr. at 23. Considering her age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. at 27.

Luther argues that the ALJ's decision finding that she is not disabled was against the weight of substantial evidence and erroneous as a matter of law. Specifically, Plaintiff maintains

---

has impairment(s) that lasted or expected to last for a continuous period of at least twelve months, and impairment(s) meets or medically equals a listed impairment in Appendix 1, Subpart P, Regulation No. 4; if so, the claimant is presumed disabled; (4) if not, the ALJ considers whether impairment(s) prevents the claimant from doing past relevant work; (5) if the claimant's impairment(s) prevents him or her from doing past relevant work, if other work exists in significant numbers in the national economy that accommodates the claimant's residual functional capacity and vocational factors, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v).

that the ALJ did not properly apply the relevant legal principles in arriving at her RFC finding; the ALJ's assessment of Plaintiff's credibility was erroneous as a matter of law; and the ALJ erred in basing her opinion on insufficient testimony from the Vocational Expert.  See Plaintiff's Memorandum of Law ("Pl's Mem."), Points 1-3 (Dkt. No. 10).

**A.  The ALJ's Residual Functional Capacity Finding is Proper and Supported by Substantial Evidence in the Record**

In order to make a proper disability finding, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory, and other requirements of work.  20 C.F.R. § 404.4545(a)(3)-(4); see also SSR 96-8p, SSR LEXIS 5, 1996 WL 374184 (S.S.A. July 2, 1996).  Here, the ALJ found that Plaintiff retained the RFC to perform "a full range of work at all exertional levels but with the following nonexertional limitations: no production rate or pace work; no contact with the public; limited interaction with co-workers; isolated with only occasional supervision; and low-stress with occasional decision-making."  Tr. at 25.

The ALJ properly afforded "some weight" to the examining state agency psychologist Dr. Jones and non-examining psychological consultant, Dr. Toor.  Tr. at 25-26.  She explicitly considered Plaintiff's statements as well as the opinion evidence from the examining sources in the record.  She noted that none of Luther's

treating sources submitted statements regarding her functional limitations. Id.

Dr. Jones diagnosed Luther with Bipolar Disorder NOS and opined that she was able to follow and understand simple directions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, and perform complex tasks independently. Tr. at 365. She did not always exhibit appropriate decision-making, and she could not consistently relate with others or appropriately deal with stress. Id. Her prognosis was fair with more consistent medication and sobriety. Tr. at 366.

Dr. Hochberg's mental RFC assessment was consistent with Dr. Jones' statements. Tr. at 381-384. Dr. Hochberg also found that Luther retained the ability to work in a simple job with limited stress and limited exposure to others. Tr. at 383.

When evaluated with the medical evidence in the complete record, the ALJ found that the assessments of Drs. Jones and Toor were generally consistent. Tr. at 25. However, she disagreed with the conclusion that Luther had the tolerance required to handle the stress of complex (semi-skilled to skilled) tasks. Id.

Plaintiff argues that the ALJ incorrectly applied more weight to Luther's age, education, or work experience, rather than considering her work-related functional limitations, such as limitations in her ability to understand, remember, and carry out

instructions. Pl's Mem. at 13-14. Plaintiff, however, relies upon a misrepresentation of the ALJ's conclusion to support her position. Dr. Hochberg's RFC assessment evaluated Plaintiff's ability to understand and remember instructions and found that she was not significantly limited. Tr. at 381. As noted above, the ALJ arrived at her conclusions by weighing conflicting evidence in the record and crediting that which was more persuasive and consistent with the record as a whole, a decision well within her discretion to do so. See, e.g., Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve." (Citing Richardson v. Perales, 402 U.S. 389, 399 (1971))).

Plaintiff also argues that the ALJ improperly disregarded evidence of GAF scores below 50, which indicate moderate to serious impairment in social, occupational, or school functioning. Pl's Mem. at 15. However, the lowest GAF score Plaintiff cited pre-dates Plaintiff's date of application for benefits by two years. The ALJ explicitly gave no weight to the GAF score of 48 from within the course of treatment because the score was "merely reflective of the counselor's assessment of the claimant's functioning at that particular moment..." and "...[s]ubsequent treatment records document[ed] a stabilizing and improving mental state." Tr. at 26. The Social Security regulations provide that "[Plaintiff's] level of functioning may vary considerably over

-14-

time;" therefore, in order to properly evaluate the severity of mental impairments, "it is vital to obtain evidence from relevant sources over a sufficiently long period [of time] prior to the date of adjudication to establish [Plaintiff's] impairment severity." See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(D)(2) (2011). Despite Luther's negative behaviors, LMSW Jones noted on June 7, 2011 that her manner of managing situations had significantly improved during her course of treatment.  Tr. at 462.

Plaintiff failed to prove limitations beyond those noted in the ALJ's RFC finding.  See 20 C.F.R. § 404.1545(a)(3) (the claimant is responsible for providing the evidence used in the residual functional capacity determination); see also Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983).  Where the record does not contain sufficient clinical findings, laboratory tests, or a diagnosis or prognosis necessary for a decision to be made, a consultative examination may be warranted at the discretion of the ALJ.  20 C.F.R. § 416.919a.  See Hughes v. Apfel, 992 F.Supp. 243, 248 (W.D.N.Y. 1997) (citing 20 C.F.R. § 404.1517 (the SSI equivalent to § 416.917)).

Here, the complete record indicates that Plaintiff's prognosis was fair with more consistent medication and sobriety.  Therefore, the arguments set forth at point 1 of Plaintiff's memorandum of law in support of his motion are rejected.

**B.     The ALJ Properly Assessed Plaintiff's Credibility**

The ALJ found that Luther's medically determinable impairment could reasonably be expected to cause her violent mood swings, difficulty focusing and concentrating, paranoia and impatience; however, she found that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent that they were inconsistent with her RFC assessment.  Tr. at 24.  The ALJ "has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment...[which she must do] in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant."  Mimms v. Heckler, 750 F.2d 180, 186 (2d Cir. 1984) (citation omitted).  The ALJ thus is not obligated to accept a claimant's testimony about his limitations without question.  Id.

Plaintiff contends that the ALJ's credibility finding was improper because the ALJ found that the statements were inconsistent with her own RFC determination.  Pl's Mem. at 17. However, this Court finds that the ALJ's credibility assessment was proper and consistent with the record as a whole.

Here, the ALJ explicitly stated that she reviewed all of Plaintiff's subjective complaints.  Tr. at 24.  She properly considered Plaintiff's activities of daily living, inconsistent testimony, and how her symptoms affected her attempts at maintaining a job.  Tr. at 26.

-16-

Specifically, the ALJ found that Luther's allegations that her symptoms were disabling lacked credibility in light of inconsistent statements. Tr. at 26. The ALJ refuted Plaintiff's complaints that she was unable to keep a job due to her psychiatric issues, finding that she was unable to maintain jobs she held during the course of treatment because those jobs required levels of social interaction which exceeded her RFC. Id. Indeed, the jobs Plaintiff described to the consultative examiner, Dr. Jones, on May 20, 2010, were in service positions, similar to her past relevant work, which the ALJ found she was unable to perform. Tr. at 362-366, 26.

Accordingly, Plaintiff's argument that the ALJ failed to properly assess her subjective complaints is rejected. See Cruz v. Astrue, No. 12-0953, 2013 WL 1749364, *14 (S.D.N.Y. Apr. 24, 2013)(credibility analysis is complete where the ALJ found that claimant's alleged symptoms were "inconsistent with the above residual functional capacity," and where ALJ provided a basis for this finding by discussing the claimant's complaints in the context of a complete medical record).

**C. The ALJ Did Not Err in Crediting the Vocational Expert's Testimony**

Plaintiff argues that the hypothetical questions posed to the Vocational Expert at the hearing were based upon an RFC finding that did not accurately and completely describe Luther's limitations. Therefore, she argues that the VE's answers to these

questions cannot provide substantial evidence to support the denial of benefits. Pl's Mem. at 19-21. However, as discussed above, this Court finds the ALJ's RFC finding to be proper, and therefore, there was "substantial record evidence to support the assumption upon which the VE based his opinion." Dumas, 712 F.2d at 1554.

Plaintiff also argues that the occupations the ALJ found that Luther could perform required abilities that would appear to exceed the RFC found by the ALJ. Tr. at 20-21. In support of her argument, she states that the job "Laundry Worker" requires the ability to carry out detailed instructions. Social Security Ruling 00-4p provides that "if a conflict exists between the evidence provided by the expert and the [Dictionary of Occupational Titles ("DOT"),] the ALJ must determine whether the expert's explanation for the conflict is reasonable." Brodbeck v. Astrue, 2008 U.S. Dist. LEXIS 17935, 26-27 (N.D.N.Y. 2008), quoting Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007). However, and according to the U.S. Department of Labor's Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles 132 (1993), a Laundry Worker performs elemental work (Mechanical [05.12.18 Cleaning and Maintenance]), which requires "performing routine work repeatedly [and] following simple instructions." See also DOT Job Codes Nos. 361-684-014, 381.687-018, and 229.587-018, respectively. (4th ed. Rev. 1991). These requirements support the ALJ's determination that the VE's testimony is consistent with the

information contained in the DOT. Tr. at 28. Accordingly, Plaintiff's argument is rejected.

## CONCLUSION

Upon review of the entire record, this Court finds that the Commissioner's denial of SSI was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the Court grants the Commissioner's motion for judgment on the pleadings (Dkt. No. 6). Plaintiff's motion for judgment on the pleadings is denied (Dkt. No. 10), and Plaintiff's complaint (Dkt. No. 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

                        **S/Michael A. Telesca**

                        _____
                        HONORABLE MICHAEL A. TELESCA
                        United States District Judge

DATED:   July 22, 2013
        Rochester, New York